UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ERIC BROWN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-15717** |
| **WARDEN JERRY GOODWIN** | **SECTION "F"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.   Factual Background

The petitioner, Eric Brown ("Brown"), is a convicted inmate incarcerated in the David Wade Correctional Center in Homer, Louisiana.[2]  On October 6, 1994, Brown was indicted by a Jefferson Parish Grand Jury for the first-degree murder and armed robbery of Camelo Salminen.[3]  The first count was later amended to second-degree murder on November 6, 1995.

The record reflects that, on August 25, 1994, Valencia Peabody left her apartment in Kenner, Louisiana, for work, leaving her boyfriend, Carmelo Salminen, asleep in the master

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show, by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

[3] St. Rec. Vol. 5 of 7, Indictment, 10/6/94 (amended 11/6/95); Grand Jury Return, 10/6/94.

bedroom and Brown, a friend of Salminen, asleep on a downstairs sofa.[4] When Peabody returned to the apartment during her lunch break, she noticed that Salminen's vehicle was gone. She went inside and found that Salminen had been fatally shot. An autopsy would later reveal that Salminen was fatally shot in the back of the head at a distance from two to five inches, and the time of death was between 8:49 a.m. and 10:49 a.m.

On their arrival, police officers found no signs of forced entry. The officers discovered that the upstairs area of the apartment was ransacked, and they learned that various items were missing, including three guns, a briefcase, a safe, and a tote bag. A neighbor, Ruth McKinnies, told police that she had seen Brown exit the apartment around 9:00 a.m. and moved Salminen's vehicle up to the front door. Brown then loaded the vehicle with items he took out of the apartment.

Later that day, the police received a report that a briefcase had been located in a dumpster behind a Taco Bell restaurant at 3117 Loyola Avenue, Kenner, Louisiana. When they arrived, the officers saw Salminen's vehicle, nearby, in a parking lot across from an apartment occupied by Brown's sister. The police obtained a warrant for Brown's arrest along with a search warrant for his sister's apartment. While searching the apartment, officers found Brown hiding in a closet. Brown was sixteen (16) years old when he killed Salminen.

Brown was tried before a jury on April 30 through May 3, 1996, October 19, 20, and 21, 1999, and was found guilty as charged.[5] The Trial Court sentenced Brown on May 9, 1996, to life

---

[4]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal. *State v. Brown*, 694 So.2d 435, 436 (La. App. 5th Cir. 1997); St. Rec. Vol. 7 of 7, 5th Cir. Opinion, 96-KA-1002, pp. 1-2, 4/9/97.

[5]St. Rec. Vol. 5 of 7, Trial Minutes, 4/30/96; Trial Minutes, 5/1/96; Trial Minutes, 5/2/96; Trial Minutes, 5/3/96; Jury Verdict, 5/3/95; Trial Transcript, 4/30/96; Trial Transcript, 5/1/96; St. Rec. Vol. 6 of 7, Trial Transcript (continued), 5/1/96; Trial Transcript, 5/2/96; Trial Transcript, 5/3/96.

in prison without benefit of parole, probation, or suspension of sentence for the second-degree murder charge and a concurrent thirty years in prison for armed robbery.[6] On direct appeal, Brown's conviction and sentence were affirmed by the Louisiana Fifth Circuit on April 9, 1997.[7] On September 19, 1997, the Louisiana Supreme Court denied Brown's related writ application without stated reasons.[8]

After unsuccessful attempts at post-conviction relief not relevant to resolution of this petition, on September 5, 2012, Brown signed and submitted a motion to correct his sentence based on the United States Supreme Court's opinion in *Miller v. Alabama*, 567 U.S. 460 (2012), which held that a life sentence imposed upon a juvenile without benefit of parole was unconstitutional.[9] Brown supplemented the motion to correct multiple times and continued to file related motions over the course of the proceedings.[10] On May 1, 2015, the Trial Court denied Brown's motion to correct his sentence and the related motions, holding that the United States Supreme Court had not declared *Miller* to be retroactively applicable on collateral review, and the Louisiana Supreme Court had declared that it was not, citing *State v. Tate*, 130 So. 2d 829 (La. 2013), *cert. denied*, __ U.S. __, 134 S. Ct. 2663 (2014), leaving no basis to grant relief.[11]

---

[6] St. Rec. Vol. 5 of 7, Sentencing Minutes, 5/9/96; St. Rec. Vol. 6 of 7, Sentencing Transcript, 5/9/96.

[7] *Brown*, 694 So. 2d at 435; St. Rec. Vol. 7 of 7, 5th Cir. Opinion, 96-KA-1002, 4/9/97.

[8] *State v. Brown*, 703 So. 2d 19 (La. 1997); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 97-KO-1310, 10/31/97; La. S. Ct. Writ Application, 97-KO-1310, 5/19/97 (dated 5/6/97).

[9] St. Rec. Vol. 2 of 7, Motion to Correct Illegal Sentence, 9/11/12 (dated 9/5/12).

[10] St. Rec. Vol. 2 of 7, Motion to Supplement, 2/11/13; Trial Court Order, 3/15/13; Motion to Impose Sentence Under *Miller*, 5/13/13; Letter to Court, 2/20/14; Trial Court Order, 4/10/14; Letter to Court, 10/20/14; Trial Court Order, 10/23/14; Motion to Supplement, dated 2/10/15; Motion to Supplement, 2/18/15; Motion to Clarify, 4/2/15.

[11] St. Rec. Vol. 2 of 7, Trial Court Order, 5/1/15.

The Louisiana Fifth Circuit denied Brown's related writ application on July 8, 2015, finding no error in the Trial Court's ruling.[12] However, on September 23, 2016, the Louisiana Supreme Court granted Brown's subsequent writ application and remanded the matter for resentencing pursuant to La. Code Crim. Proc. art. 878.1, based on the United States Supreme Court's ruling in *Montgomery v. Louisiana*, __ U.S. __, 136 S. Ct. 718 (2016), which held that *Miller* was retroactively applicable on collateral review.[13] On November 29, 2016, the Court denied Brown's request to reconsider the mandate that he be resentenced under La. Code Crim. Proc. art. 878.1.[14]

Brown returned to the state trial court with repeated requests for his resentencing under *Miller*.[15] He was eventually provided appointed counsel, and his counsel filed additional supplemental motions and other pleadings towards accomplishing the resentencing.[16] The state trial court has scheduled and conducted multiple conferences and hearings related to Brown's resentencing, both before and after the remand order issued September 23, 2016.[17] According to

---

[12] St. Rec. Vol. 7 of 7, 5th Cir. Order, 15-KH-395, 7/8/15; 5th Cir. Writ Application, 15-KH-395, 6/22/15.

[13] *State ex rel. Brown v. State*, 200 So. 3d 345 (La. 2016); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2015-KH-1405, 9/23/16.

[14] *State ex rel. Brown v. State*, 210 So. 3d 802 (La. 2016); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2015-KH-1405, 11/29/16.

[15] St. Rec. Vol. 3 of 7, Letter to the Court, 1/29/16; Motion to Impose Sentence Under *Miller*, 2/13/16; Motion to Correct Illegal Sentence, 2/16/16; Motion to Impose Sentence Under *Miller*, 3/1/16.

[16] *See e.g.*, St. Rec. Vol. 3 of 7, Supplemental Motion to Correct, 3/1/16; Motion to Preclude, 5/4/17.

[17] *See e.g.*, Trial Court Order, 2/24/16; Minute Entry, 5/5/16; Minute Entry, 6/20/16; Minute Entry, 9/12/16; Minute Entry, 10/20/16; Minute Entry, 12/8/16; Minute Entry, 2/15/17; Minute Entry, 3/20/17; Minute Entry, 5/25/17; Minute Entry, 6/29/17.

4

the State, the latest hearing scheduled for August 16, 2017, was to be continued at the request of Brown's counsel.[18]  As of this writing, Brown has not been resentenced.

## II. Federal Habeas Petition

On October 19, 2016, the clerk of this Court filed Brown's petition for federal habeas corpus relief in which he asserts that, contrary to law, the Louisiana courts plan to resentence him under *Miller* using a new sentencing scheme that was not in effect at the time of the crime could, again, expose him to a sentence of life imprisonment either with or without parole.[19]  Brown argues that, if the state courts follow law existing at the time he committed the crime, he would no longer face a life sentence.

The State initially filed a response, asserting that Brown has not exhausted state court review and his claims are premature since he has not yet been resentenced in accordance with *Miller*.  Further, the State contends that the state courts should have a fair opportunity to address his resentencing.[20]  Alternatively, the State argues that the sentencing scheme chosen by the State is a matter of state law and does not implicate a question of federal constitutional concern.  The State further suggests that, because the resentencing is proceeding before the state trial court, Brown's claims under *Miller* are moot.  In its supplemental response, the State reiterates its urging that the state courts should be allowed to address Brown's sentencing under the sentencing schemes recently adopted by the State Legislature following, and in compliance with, *Miller*.[21]

---

[18]Rec. Doc. No. 21.

[19]Rec. Doc. No. 1.

[20]Rec. Doc. No. 10.

[21]Rec. Doc. No. 20.  The State intended to attach a copy of the new legislation passed to assist the state courts with correcting sentences under *Miller*.  Unfortunately, the exhibit attached involves conservation and waste management disposal fees, topics wholly unrelated to this matter.  Rec. Doc. No. 20-1.

### III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[22] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on September 29, 2016.[23]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default."  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State has asserted that Brown's claims are not exhausted, and otherwise, are premature because he has not yet been resentenced.  The State is correct, and Brown's petition must be dismissed as premature and for lack of jurisdiction.

### IV.   Prematurity and Lack of Jurisdiction

Broadly construed, Brown challenges the constitutionality of a sentence that has not yet been imposed by the state courts.  In spite of this, Brown concedes that the State and the state trial

---

[22] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent contrary legislative intent, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[23] The Fifth Circuit recognizes that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Brown's federal habeas petition on October 19, 2016, when it was received with the filing fee.  Brown dated his signature on the form petition on September 29, 2016, which is the earliest date appearing in the record on which he could have presented his pleadings to prison officials for mailing to this federal court.  The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if the filing fee is not paid at time of mailing) (citing *Spotville*, 149 F.3d at 376).

court are properly pursuing his resentencing in conformity with *Miller* and *Montgomery*. However, Brown asserts that the sentencing schemes being considered by the state courts were not in place when he committed the crime. Brown complains that reliance on these new rules, rather than application of laws in place at that time, would violated ex post facto considerations.

The Ex Post Facto Clause prohibits states from enacting a law that "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *See Collins v. Youngblood*, 497 U.S. 37, 37-38 (1990). For a criminal law to be improperly ex post facto, "it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 29 (1981). Brown suggests that any new sentence imposed that did not exist when he committed the crime, whether he is resentenced under the new rule in La. Code Crim. Proc. art. 878.1 or other recent legislation, will violate ex post facto restrictions.

As an initial matter, however, this Court is unable to address the constitutionality of any potential sentence not yet imposed on Brown, because the issue would not be ripe for adjudication. *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated.") (internal quotation omitted); *United States v. Magana*, 837 F.3d 457, 458-59 (5th Cir. 2016) (finding defendant's challenge to portion of sentence not ripe for review because challenged portion was contingent on future events). Any challenge Brown has to the constitutionality of his future sentence can be adequately addressed through the proper channels after the sentence is imposed. These proper channels would include any appeal to or supervisory review by the higher state courts, which he may be entitled to under Louisiana law and must be exhausted before federal habeas relief can be

considered. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519 20 (1982)).

Furthermore, state courts should be allowed an opportunity to address and correct in the first instance any potential constitutional violation arising from a petitioner's claims. *Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009) (quoting *Carey v. Saffold*, 536 U.S. 214, 220 (2002)) (the "AEDPA's goal [is to] promot[e] comity, finality and federalism by giving state courts the first opportunity to review [the] claim and to correct any constitutional violation in the first instance . . ."); *see Hilton v. Braunskill*, 481 U.S. 770, 775 (1987); *Smith v. Lucas*, 9 F.3d 359, 366-67 (5th Cir. 1993). The Supreme Court made clear that the states have options in correcting *Miller* violations, including the fashioning of other compliant sentences and the offer of parole eligibility rather than resentencing. *Montgomery*, 136 S. Ct. at 736. As much as Brown asks this Court to direct the sentence to be imposed, that is not a remedy available under *Miller* or *Montgomery*.

For the foregoing reasons, the Court does not have jurisdiction, at this time, to consider Brown's challenge to a sentence that has not been imposed, as it is not a matter ripe for federal habeas review. *Reynolds v. LeBlanc*, No. 16-342, 2017 WL 67528, at *1-*2 (E.D. La. Jan. 6, 2017) (Vance, J.) (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967)). Any claim that Brown's future sentence may be unconstitutional must be dismissed for lack of jurisdiction as premature. *Reynolds*, 2017 WL 67528, at *2 (citing *Magana*, 837 F.3d at 460).

**V.     Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Eric Brown's petition for the issuance of a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction as premature.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[24]

New Orleans, Louisiana, this 14th day of September, 2017.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[24]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.